# District Court of the Navajo Nation

Judicial District of Window Rock, Arizona

**George Elias Chavez, Plaintiff,**

**v.**

**Michael Upshaw, Attorney General,**
**Navajo Nation Department of Justice,**
**and**
**Kim Williams, Director,**
**Office of Personnel Management, Navajo Nation,**
**Defendants.**
**Decided August 22, 1989**

## FINDINGS OF FACT, OPINION AND ORDER

George E. Chavez, Plaintiff, Representing himself *pro se*; James Jay Mason, Attorney, Mason, Rosebrough & Isaacson, P.A., Gallup, New Mexico, for the Defendants.

Judge Robert Yazzie Presiding.

## FINDINGS OF FACT

Plaintiff, a non-Indian, residing in Gallup, New Mexico, brings this action against Michael Upshaw, the Attorney General of the Navajo Nation, and Kim Williams, Director, Office of Personnel Management, Navajo Nation. Plaintiff was employed as a law clerk with the Department of Justice, from November 1982 until February 20, 1987. On February 3, 1987, Upshaw verbally notified Plaintiff of his intent to terminate him effective February 20, 1987. On February 17, 1987, Plaintiff was notified in writing by Upshaw that he was terminated from his employment as a law clerk effective 5:00 p.m. on February 20, 1987. On February 18, 1987, Plaintiff notified Williams of his appeal of his termination and requested a grievance hearing. Defendant Williams denied Plaintiff's request for a grievance hearing by written notice dated March 9, 1987.

The Navajo Nation Personnel Policies and Procedures require grievance requests to be referred to the grievance committee within 5 days of their receipt.

Plaintiff filed a notice of his intent to sue the defendants on April 6, 1987. He filed this lawsuit with the Window Rock District Court on June 23, 1987, The Navajo Division of Public Safety served Defendant Upshaw on July 20, and Defendant Williams on August 7, 1987. After receiving notice of this suit, Defendants offered Plaintiff the grievance hearing they had previously denied; Plaintiff rejected this offer.

In deciding whether to grant the defendants' Motion to Dismiss, the following issues will be examined:

1) Is the Navajo Nation immune from suit under the Navajo Nation Sovereign Immunity Act?
2) Do the District Courts of the Navajo Nation have jurisdiction to hear employment grievance matters?
3) Is the suit barred by Plaintiff's failure to join the Navajo Nation as a party?
4) Was the defendants' delay in offering grievance proceedings justified by unusual circumstances?
5) Have defendants offered Plaintiff access to adequate administrative remedies, and if so, does Plaintiff's rejection of them bar this suit?
6) Has Plaintiff stated a cause of action upon which relief may be granted?

## ISSUE I: IS THE NAVAJO NATION IMMUNE FROM SUIT UNDER THE NAVAJO NATION SOVEREIGN IMMUNITY ACT?

One N.T.C. Section 353(a) of the Navajo Nation Sovereign Immunity Act states unequivocally that "The Navajo Nation is immune from suit." However, 1 N.T.C. Section 354 lists exceptions to this immunity. In *Johnson v. Navajo Nation et al.*, 5 Nav. R. 192 (1987), the Navajo Nation Supreme Court held that the Navajo Nation may be sued with respect to any claim for which the Navajo Nation carries liability insurance. *Id.* at 196, Under such circumstances, the Navajo Nation has expressly waived its immunity. Navajo courts have jurisdiction over the Navajo Nation in cases which fall within this exception. *Id.* Here, the defendants have admitted that the Navajo Tribal Government carries commercial liability insurance and/or self-insurance sufficient to satisfy Plaintiff's claims. Defendants have also admitted that Plaintiff has compiled with the notice requirements of the Navajo Nation Sovereign Immunity Act.

Because defendants have admitted they have liability insurance or self-insurance sufficient to cover Plaintiff's claims, defendants are not immune.

## ISSUE II: DO THE NAVAJO DISTRICT COURTS HAVE JURISDICTION TO HEAR EMPLOYMENT GRIEVANCE MATTERS?

Seven N.T.C. Section 253(2) provides that the district courts of the Navajo Nation shall have original jurisdiction over "all civil actions in which the defendant is a resident of Navajo Indian Country, or has caused an action to occur within the territorial jurisdiction of the Navajo Nation." It seems clear that this court has jurisdiction to hear grievance matters pursuant to this provision. The Navajo Nation Supreme Court has dealt with this issue in some detail. In *Navajo Skill Center et al. v. Benally*, 5 Nav. R. 93, 95 (1986), the Court stated:

> Judicial review of administrative action is reasonable and necessary. There are certain fundamental principles that support such review. Some form of judicial review strengthens rather than weakens the administrative process. Judicial review develops the principles of fairness and due process which are necessary for the administrative body to obtain respect for and obedience of its decisions. Denial of judicial review would be a deprivation of what the courts have to offer. Judges become specialists in civil rights issues, in the interpretation of statutes, in defining and enforcing fair procedures, ... and in determining whether there has been an abuse of discretion. Finally, judicial review of administrative action is consistent with the principle and desirability of appellate review of tribal court proceedings.

> Judicial review of administrative action may be authorized by statute, implied in the inherent powers of the courts, or mandated by civil rights guarantees of due process and equal protection. Thus it is rare that all agency action is insulated from some form of judicial review. The questions then in each individual case become (1) what action is reviewable (2) when is it reviewable (3) what is the scope of review and (4) which court will do the initial reviewing.

No one would argue with the proposition that it is best if administrative remedies are exhausted. However, in the case at hand, there were simply no administrative alternatives offered even though they were mandated by the Navajo Nation Personnel Policies and Procedures. This court, on that ground alone, has the right and even the duty to act. Furthermore, pursuant to 1 N.T.C Section 354(e)(5), this court has jurisdiction to hear actions where alleged civil rights have been violated. Such is the case here. This provides an additional ground for jurisdiction.

## ISSUE III: IS THIS SUIT BARRED BY PLAINTIFF'S FAILURE TO JOIN THE NAVAJO NATION AS A PARTY?

It is clear the named defendants in this action were acting as employees of the Navajo Nation. They are being sued in their official capacities. Additionally, the Navajo Nation's lawyers are defending this suit, their insurance is involved and the rights of their employees are being determined. The Navajo Nation is effectively a part of this litigation.

The real issue here is whether the failure to name the Navajo Nation as a defendant is of any consequence. It is not. The key question is has the Navajo Nation consented to this suit through a waiver of its sovereign immunity. This court has already determined that it has. Having found this, it is not necessary for the Navajo Nation to be named as a party. The named defendants are employees of the Tribe who are clearly part of the Executive Branch of the Navajo Nation. A judgment against them will run to the Navajo Nation's insurance and its interest will be protected.

Although not absolutely necessary, it would be a good practice in such instances for the Navajo Nation, as well as its employees, to be named a party.

Therefore, pursuant to 7 N.T.C. Section 255, Plaintiff shall amend his complaint in order to include the Navajo Nation as a defendant, However, inasmuch as all procedures have been properly complied with, additional service on the Navajo Nation will not be necessary. Furthermore, the Navajo Nation has 60 days in which to answer said amended complaint.

## ISSUE IV: WAS THE DEFENDANTS' DELAY IN OFFERING GRIEVANCE PROCEEDINGS JUSTIFIED BY UNUSUAL CIRCUMSTANCES?

Plaintiff was fired in February, 1987. He requested a grievance hearing in a timely manner and the request was denied. In June, 1987, Plaintiff filed suit. On July 20, 1987, only after receiving notice of the suit, the Nation belatedly offered a grievance hearing. The defendants now claim that the delay in offering the required grievance hearing was justified due to unusual circumstances. These circumstances include that there was a new Tribal Administration, that the grievance committee members and panel authorities had to be elected and or appointed, and that these people had to receive adequate training.

Courts require that administrative remedies be exhausted before they will get involved. This is simply common sense. When matters are settled administratively, the courts' resources are not unnecessarily burdened. Also, even if a settlement is not reached the administrative process can often develop facts beneficial in the court's later consideration of a matter. For these and other reasons, courts nearly always wait until all administrative remedies have been exhausted before considering a case.

Here, Plaintiff did attempt to exhaust his administrative remedies. He asked that the proper administrative procedures be followed and he requested a grievance hearing in a timely manner. The Personnel Policies and Procedures of the Navajo Nation mandated that this request be granted but it was summarily denied. There is nothing in the record that indicates Plaintiff would have been given a chance for relief had he not filed suit.

It is understandable that grievance procedures may be delayed a few days and courts will often take understandable delays into account. Courts will often bend over backwards in order to permit an administrative process to continue. However, in this case, proposed administrative hearings were unconscionably delayed.

Defendants make much of *Navajo Skill Center, et al. v. Benally*, 5 Nav. R. 93 (1986), but this case actually supports Plaintiff. In *Benally*, the plaintiff refused to follow the administrative process and commenced litigation. Here, Plaintiff followed the administrative process but was refused. He had no choice but to go to court. It was the defendants who failed to follow the administrative process, not the Plaintiff.

### ISSUE V: HAVE DEFENDANTS OFFERED PLAINTIFF ACCESS TO ADEQUATE ADMINISTRATIVE REMEDIES, AND IF SO, DOES PLAINTIFF'S REJECTION OF THEM BAR THIS SUIT?

These issues are derivative of the previous one. It is clear that Plaintiff complied with all procedural requirements while the defendants failed to do so. They denied Plaintiff's request for a grievance hearing in violation of their own policies, and only offered such a hearing upon receipt of notice of this suit. This was five months after Plaintiff was fired. Defendants cite *Brewster v. Bee*, 1 Nav. R. 128 (1977), for support; however, as with *Benally, supra*, the opinion actually supports Plaintiff. The *Brewster* Court held:

> Exhaustion of adminsitrative remedies does not mean and never has meant that [a party] must wait forever for the proper adminsitrative action. It simply means ... that a person must pursue with diligence the normal administrative processes before coming to court. *Id.* at 130.

Here, Plaintiff diligently pursued the proper administrative remedies but the defendants blocked his efforts. He was not provided access to any administrative remedies until after this suit was filed. The defendants failed to offer Plaintiff access to adequate administrative remedies. His rejection of them does not bar this suit.

### ISSUE VI: HAS PLAINTIFF STATED A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED?

Defendants assert Plaintiff has failed to state a cause of action upon which relief can be granted. However, no support is provided for this contention. It is clear the defendants have either wilfully or negligently failed to follow their own administrative procedures. In doing so they have negatively impacted Plaintiff's rights and interests.

Plaintiff has also pleaded a violation of his civil rights and, "for the purpose of a motion to dismiss, all well pleaded facts are considered to be true." *Curtis v. NNBA*, 3 Nav. R. 178 (1981). If a complaint sets forth facts showing the plaintiff is entitled to relief under any theory susceptible to proof, this court will not grant a motion to dismiss. Here, Plaintiff has met that burden.

## CONCLUSIONS

The Navajo Nation may be sued with respect to any claim for which the Navajo Nation carries liablity insurance. Here, it has been admitted that the Navajo Nation carries insurance sufficient to cover Plaintiff's claim. Consequently, the defendants are not immune.

The district courts of the Navajo Nation have jurisdiction whenever a defendant causes an action to occur within the territorial jurisdiction of the Navajo

Nation. 7 N.T.C. Section 253(2). Here, the Plaintiff was an employee of the Navajo Nation who was denied a grievance hearing in violation of the Navajo Nation Personnel Policies and Procedures. Thus, the defendants caused an action to occur within the territorial jurisdiction of the Navajo Nation. Additionally, pursuant to 1 N.T.C. Section 354(e)(5), this court has jurisdiction to hear actions in which it is alleged civil rights have been violated. Such is the case here.

The named defendants in this action are being sued in their official capacities as employees of the Navajo Nation. They are clearly a part of the Executive Branch and any judgment against them will run to the Navajo Nation's insurance. Although not absolutely necessary, it would be a good practice for the Navajo Nation, as well as its employees, to be named a party in such instances. Therefore, Plaintiff shall amend his complaint in order to include the Navajo Nation as a defendant. However, because all procedures have been properly complied with, additional service on the Navajo Nation will not be required.

Plaintiff attempted to exhaust all administrative remedies before filing this suit. He followed all the proper administrative procedures and requested a grievance hearing in a timely manner. While he complied with all the procedural requirements, the defendants failed to do so. Only after receiving notice of this suit did the defendants offer Plaintiff the grievance hearing they had previously denied in violation of their own policies. In no way does Plaintiff's rejection of the defendants' belated offer bar this suit.

The defendants have either wilfully or negligently failed to follow their own administrative procedures. In so doing they have negatively impacted Plaintiff's rights and interests. Additionally, Plaintiff has pleaded a violation of his civil rights. Thus, Plaintiff has stated a cause of action upon which relief can be granted.

## ORDER

Defendants' Motion to Dismiss is DENIED for reasons stated herein.

IT IS FURTHER ORDERED that this matter shall be scheduled for a hearing on the merits.